Case number 23-1425, Renard Austin et al. v. Michael Mosley et al. Argument is not to exceed 15 minutes per side. Mr. Desmond, you may proceed for the appellants. Thank you. Good afternoon, Your Honors. Christopher Desmond from Johnson Law on behalf of the plaintiffs Renard Austin and Ursula Cook. Judge Strach, I'd like to reserve three minutes for rebuttal, please. Certainly. And if you have any trouble hearing, please let us know on the video. Thank you, Your Honors. Speak up. So this is sort of the atypical, at least in my experience, the atypical municipal liability or Monell case in a couple manners. The first is that we're not here today to argue sort of one of the essential hallmarks of a municipal liability case, which is whether there was an underlying constitutional violation. That is not at issue in this case. My client, one of my clients was acquitted. The other client was exonerated by the Conviction Integrity Unit in Wayne County upon Officer Mosley being convicted relative to an FBI sting that happened that essentially established that he was an unreliable police actor who had been accepting bribes from drug dealers in exchange for dropping criminal charges or other material benefits to Officer Mosley. So the issue of whether there's an underlying constitutional violation is not in front of this court. I think this case is also atypical because of the overwhelming level of evidence regarding the unconstitutional behavior that had been happening within the Detroit Police Department. This is not a situation where we're here on something like an excessive force claim where we're arguing that there were previous acts of excessive force. This is an issue where the very unit in which Mr. Mosley was working and the unit that raided my client's home unlawfully had previously been the subject of its own raid by the Federal Bureau of Investigation in 2014. So in 2014, the FBI determined that at least three members of this narcotics unit were acting unlawfully, whether that was through accepting bribes or stealing narcotics from the subjects of their raids. As a result of that, the Detroit Police Department purported to reorganize that unit, but essentially... Let's step back to the 2014. I'm trying to understand the record and your burden to show similarity of violative conduct. Tell me what your argument and evidence is that the 2014 wrongs, undisputedly wrongs, are similar to the conduct that you're challenging here. One of the primary reasons I would say that there's similarity, and this is something that's just not present in the district court's opinion really, two of the three individuals who were arrested and convicted in 2014, they were arrested for extortion, which is simply bribery. It's bribery in the context of police investigation. And as the district court's opinion, I think the district court's opinion notes this fact, our brief certainly does, we allege right in the very beginning of our complaint that one of the things that Officer Mosley did upon unlawfully entering our client's home was demand a $10,000 bribe in response for making any criminal charges go away. Was that the gravamen of the claim? Was the claim relative to that extortion? Which I agree, that's a much closer tie than the impropriety of the search warrant. I think when reading the totality of the complaint, there's an unlawful entry that's caused by the falsification of the warrant affidavit by Officer Mosley. But I think what the complaint makes clear is that part of the motivating factor for Officer Mosley's unlawful conduct was to be able to put himself in a position to demand a bribe. And that's of course what Officer Mosley is ultimately arrested for and convicted of. Not the bribery, the attempted extortion of my clients, but the extortion of an undercover drug dealer who was working on the bequest of the FBI. And so he had demonstrated a pattern of seeking bribes in the same manner that Officers Hansberry and Lavelle had in 2014. I agree that you mentioned the extortion in the complaint in the beginning part where you talk about the factual predicates. But then when you read the complaint, your theory here did not seem to be the extortion aspect at all. It seemed pretty clear to me at least that the constitutional violations that you were pursuing were the falsification of the search affidavit and the execution of a search warrant that wasn't supported by probable cause. That's what you say. I think that those are the... so initially Officer Mosley was a defendant. We're using Judge Stranz's language. Those were the gravamen of the complaint, were they not? Those were the allegations that were made against Officer Mosley in terms of Officer Mosley's involvement in this case before Officer Mosley was dismissed. So when we were describing and fashioning the underlying constitution... But that's who you're trying to get the city to be responsible for, Mosley. Yes, Your Honor. That's true. That's true, Your Honor. I mean, I think that the complaint has to be read as a whole and I don't think that the subject of bribery can be read out of this complaint. I think there's also always an opportunity to amend complaints to make them comport with the proofs. That's certainly something that we'd be happy to do upon remand if this court were to remand this matter. But you didn't do any of that. It seemed to me, and I want to give you a full and complete opportunity to explain, you presented to the district court a claim that was based on falsification of the search warrant and lack of probable cause. You didn't present to the district court a bribery case, although you did mention it in the complaint, but that's not how you fashioned what you were seeking from the district court. No, we don't have a count that's styled as a bribery or an extortion count. I'd agree with that, Your Honor. What we do have is we have allegations that the city of Detroit had fostered an environment that allowed for unconstitutional behavior to be occurring by its officers. And so that unconstitutional behavior is ultimately what was at issue in this case, whether it was the unlawful entry, whether the motivation for that unlawful entry was to illegally steal narcotics, illegally steal firearms, commit extortion of the subject of a search warrant. I think that the gravamonte of the complaint is that the city of Detroit, as demonstrated by both the 2014 raid and Operation Clean Sweep in 2019, were allowing for this unlawful environment to exist. But you agree that under CONIC you have to show a pattern of similar constitutional violations, right? That is one avenue to showing deliberate indifference. Well, that's the one you're seeking. Yes. So the problem that we need to figure out how to resolve, if there is a solution, is the 2014 investigations didn't seem to address what you're claiming the city should have been on notice of, i.e., falsification of search warrant affidavits. That wasn't the... They were aware of other things, no question about it. They were aware of other things, but not what you're alleging here. Correct, Your Honor. 2014 was not explicitly tied to falsification of affidavits. Now, what I will say that both 2014 and Operation Clean Sweep show, especially when we're talking about something like failure to supervise, they demonstrate this general environment that allowed unconstitutionality to be occurring inside of the department. There's one passage that I'd briefly like to direct the Court to from Operation Clean Sweep, and this is in regard to the failure to provide SOP, standard operating procedures, to the defendant in this case and the general members of both the narcotics unit and the major violators unit. Operation Clean Sweep states, this failure to promulgate the SOP is a factor to the lack of adherence to the written protocols and a culture of officers operating outside the scope of the MVU mission statement and guidelines. This is frontline supervisory neglect because it's incumbent upon the sergeants and lieutenants to ensure policy is implemented and followed. This lack of oversight resulted in an environment lacking in the work standards required for law enforcement to provide proper level of services to Detroit citizens. And so I think that when we go back and when we look at cases like Monell and cases like City of Canton, or yeah, City of Canton v. Harris, what those cases are really talking about is whether or not you can associate unconstitutional behavior to either direct action by a municipality or a general pattern of allowing for unconstitutional behavior to occur. Now, I understand your concerns, Judge McKeague, that perhaps the unconstitutional conduct looks slightly different from one case to another. But in general, what we're talking about here is a very similar pattern of individuals within the narcotics unit abusing their position because they're not being properly supervised to their own monetary advantage or their own benefit. Let's put it another way. Do you have any cases that you can point us to that get you around this pattern of similar constitutional violations that would say, in essence, that because there are some bad actors doing X, therefore the city in this case should have been on notice that there might be other bad actors doing Y? No, I don't think that I do have a case that's directly on point, Judge McKeague, where there is this level of sort of abdication of responsibility on behalf of a city. And that is part of the reason why I say this is an atypical municipal liability case. So you would be asking us, in essence, to expand CONIC to establish Monell liability for the city? I don't think that it's necessarily expanding CONIC, Your Honor. I think that what it's doing is enforcing the very underpinnings of both Monell, but more important than Monell, City of Canton, where City of Canton is speaking broadly to the issues of failure to train or failure to supervise because I think that this is a textbook example of a failure to supervise officers. And one of the sort of frustrating things for me as the attorney on this case, when reading the district court opinion, when we start talking about this idea of notice and the court says, well, 2014 was different and so there's no evidence that the court or that the department was on notice of this behavior, I don't think that a department should be able to simply blindfold itself or close its eyes to the exact contours of the unconstitutional behavior of its officers. Because once that 2014 raid happens, the city is certainly on notice that we have a real problem on our hands here in terms of our department. And all the testimony in this case indicates that there were no changes that occurred from that point forward. There was no new training. There was no new level of supervision. It was just a new name. What's that? It was just a new name. Simply a new name. Change it from narcotics to major violators unit. So help us understand, though, how we can see the through line to establish a customer practice problem of a similar type of violation when you have such massive impropriety going on. And what is it in your complaint that is sufficient in your argument and the evidence that this court looked at? Because this court said, yeah, they did that in 2014. The three convictions came from it. But then challenged that it was similar to the conduct here, sufficiently similar to put somebody on notice. I'm struggling with whether you can have somebody on notice that you've got a deck of cheaters who are going to cheat whatever way they want to, and that puts you on notice for then any type of cheating or impropriety they choose. It makes rational sense, but I'm struggling with how we satisfy the legal requirements. Well, I think, Your Honor, there's one way. There's sort of a very broad view, very broad way of looking at this, or I'm sorry, a very narrow way of looking at this, where we can say this case involved extortion, whereas this case involved falsification of a warrant. The sort of slightly broader, but I don't think it's an improperly or an overly broad view, is that all of these cases involve the ways in which the members of the narcotics unit are interacting with their supposed targets during the course of raids, because that's what all of these relate to, whether it's extorting someone during the course of the raid, whether it's falsification. But this is a setup to get to the raid, right? This was an improperly written search warrant affidavit.  That is what the claim is, right? That's right, but there's no reason to falsify that search warrant affidavit. Mosley is falsifying search warrant affidavits not to make himself look like a super cop who's busting criminals. He's doing it to put himself in a position to be able to gain in some way, just like Lovell, Hansberry, and Watson were back in 2014. And so he falsifies that search warrant affidavit, which Operation Clean Sweep and Mosley's testimony himself demonstrates, his supervisor, Meadows, wasn't going to reject in any way, because he's simply rubber stamping everything that Mosley brings to him, despite his notice of what happened in 2014. He's doing that to put himself in a position to be able to capitalize on the authority that he's been granted by the narcotics unit turned major violators unit. And so I think that that is the common thread that runs through both of these. If Operation Clean Sweep predated this search warrant affidavit, I mean, I understand you'd have a really good argument there, but Operation Clean Sweep's report was three years after this affidavit. The report is afterwards, but it addresses conduct that precedes and encompasses these events, and certainly the FBI, who's in- But the whole question is, was the city aware, and by failing to do whatever, they were deliberately indifferent? So the fact that the report says it was going on in the past, it by no means establishes that the city knew about this relevant, similar constitutional violation conduct. I think what it demonstrates for us, Your Honor, is that as early as 2017, and this is only three years removed from the FBI rating in 2014, the FBI, an external entity, knows that something is happening and has begun investigating this unit again. And so whether the city of Detroit- Any even hint that they told the leadership of the city? No, there's no- No, there isn't, Your Honor. There's no hint, and I won't purport that there is. There's no hint that they told anybody in 2017. And I'd suggest one of the reasons why they couldn't do that is because they have no reason to believe that the individuals that they would provide that hint to aren't likewise involved in this. One of the individuals who ends up being investigated as part of Operation Clean Sweep is Sergeant Meadows, who's the supervisor of Officer Mosley. And so these are the same individuals that were in narcotics in 2014, and so they know what occurred under their noses in 2014. And yes, Monell and its progeny does require that we show some pattern, but there are also avenues to Monell liability that show that if it's obvious that the inadequate training or supervision, that's that question, is going to lead to a violation or potentially lead to a violation, that liability can attach. And I'd suggest that it's- That's a good argument, but you don't seem to focus on obvious. And the reason I suggest that you probably don't is that at least my understanding is those cases talk about things like use of deadly force, where anybody would say, well, it's obvious you need to train somebody about use of a gun or a chokehold or something like that. I don't-unless you have some cases that address obviousness in a way that I'm unaware of, you really can't get in the door that way. No, I don't think that there is a- I don't think that there is a case where we have this sort of institutional level of corruption where a department who has their unit rated by the FBI turns around and says, we're going to take 60% of these people and we're going to throw them right back into service doing the same job without any new policies, any supervision, any new practices, knowing that they haven't been trained and that we haven't even given them our standard operating procedures. I think that- I think your time is up. It certainly is, Your Honor. You will have all of your rebuttal time, and perhaps in that time can think also of the case that you would argue is the closest parallel to enable this sort of a claim in a massive case like this with a variety of impropriety. Thank you, Your Honor. I appreciate it. Thank you. Ms. Diggins? Can you hear everything? Yes, I did. Great. We can hear you. Can you hear me? Yes, just fine. Thank you, Your Honor. I thank the court for its questions. In this particular case, the plaintiff has not presented any substantive evidence of deliberate indifference or the casual connection from the acts of Defendant Mosley that establish that the city of Detroit is liable because either it had prior knowledge and it did nothing or failed to- or that it acted deliberately indifferent in this case and it failed to train or to supervise or it tolerated an atmosphere of unconstitutional conduct in here. Let me ask about that. It just seems to me that you have a 2014 finding that there was a significant problem with the police in this particular unit, and three people, three officers in that unit were actually convicted after the 2014. And then within, what, four years or less, you create a new special group and you change the name and then you take 60% of the breaching or problematic group that was disbanded and you put them in the new named unit and they go right back to doing business. Why wouldn't that put you on notice that you have a problem? First of all, Your Honor, in 2014, there is no evidence that the city was aware. Now, as the question- The city was aware of what? of any rogue or unconstitutional behavior. And we are focusing on the conduct of Officer Mosley. And it's a failure to train claim here and a failure to supervise as well as in action. In the complaint alleged that Mosley failed- that falsified the search warrant. That was the- and it failed to establish probable cause. That's the nature of the claim. That's the nature of the conduct here. And there is no evidence that was presented by the plaintiff in this particular case of a failure to train claim. To show that the city was delivering a different- Well, didn't they say that there was a manual? Counsel, didn't they say there was a manual and SOPs and the standard operating procedures were not, in fact, available to the officers or had not been provided specifically to them? That's- that was in- after the- they- that report came out in Operation Sweep. And that was like in- which was published in 220- in 221. That came out- they- then that happened in 219. All these information about- and that's the whole point that the plaintiff rest- case on these two FBI reports. And then the city- you must remember this- the city undertook Operation Sweep and made the report. And they- they established and found all these things after. But they found and discovered all this after the October 2018 act in which Mosley falsified the affidavit. And that's why we're here. Because based on that affidavit, they were arrested. One pled, one didn't. And when Mosley- when they found out later on in 219 Mosley had participated in something else, there was- that was reason why that they were able to bring this claim. Yeah, but the investment- There's no- there's no- My struggle, counsel, is that the investment- Pattern of conduct. Counsel. No use of pattern of conduct. Counsel. Of any failure to train. In fact, Mosley- Counsel. Counsel. Please pause for the judges. Okay. I'm sorry. I couldn't- Yes. I'm- I understand that Operation Clean Sweep was a 2019 investigation. So I understand there's an issue there. But what it found is that between 2014 and 2019, these improprieties continued. Right? That is, in fact, the investigation went back. They didn't say, oh, we're starting on January 1 of 2019. It was a Operation Clean Sweep and the report. The report, I agree, didn't come out until 2021. But the evidence indicates that these improprieties were going on during earlier time periods. Your Honor, the complaint and the allegations at the time was- and even in 2014, that was not the allegation. The allegations in 2014 when the FBI first maybe became aware was that some police officers were taking the money of drug dealers. When in bribery, they were actually stealing the drugs in bribery. There was no allegations at that time of failure to falsify search warrants or affidavits. There was no- and there's no random record in there where they addressed that issue. And the district court also very clearly, when it reviewed that particular report, there are no allegations of failure to complete and accurately falsify search warrants. And so in a failure to train case, you must show that that particular conduct, that the city of Detroit was aware of it or they were aware of actions by Mosley. There is no- in 2014, and nobody was aware of it until 2019, that Mosley had done any rogue conduct. That Mosley had failed to- had participated in any of these particular grievances of constitutional conduct in this particular case. We have to be careful just because there is a- why there was some allegations that we cannot subject Monell and Connick and all them clear to the city based on responded superior. Mosley testified, I was trained, that's the claim here, not the whole corrupt thing and that's what he was charged with, not the whole corrupt system in here. I was trained, I know how- I was trained in how to complete search warrants in such a way he knows that he was supposed to tell the truth. I was trained that you don't commit constitutional violations, that you must establish probable cause. He testified on that and he said that I did these things on my own volition. Let me ask you, Counselor, how does that fit when the city is the entity that was involved in an earlier review by the FBI and then a subsequent review by the FBI and the subsequent review is reviewing officers who were on the original unit that had problems in 2014 and the city determined and chose to keep them in a newly named comparably charged unit. Where Mosley was. I understand you're saying that there is errant behavior, the city is not charged with knowing when some particular officer is going to surprisingly engage in just impropriety. But when they've been in a group that did exactly that and resulted in charges against three officers and convictions and then you take those same people and you put them under a new name without any specific changes in their training, why isn't that deliberate indifference? No, Your Honor, I do not think so. But why? Why? What case law supports the fact that running that risk with the same individuals in the same location that resulted in the same sort of extortionate behavior is sufficient for the city to be on notice you can't do that? The city became on notice after June 14 by the FBI about the bribery and drugs. Mosley in this case was not the subject of any evidence that he had done anything wrong. And when the chief judge, not chief judge, Craig Strong, who was the chief of police, he took action to try to revamp the system. Was it perfect? Maybe not. He didn't bring back the old people. He brought back people who had not been charged with any action. Yes, he put a new name. And the fact that there were no SOPs does not change the fact that Mosley testified that he was trained. There's no evidence that he was not trained. This is a failure to train claim here on this particular case that he knew that you must establish a probable cause and a search warrant. So in this particular case, there's no knowledge that in this case that there's any lack of training or supervision for failure to issue search warrants. That is the focus of this particular claim in here. And the fact that there was no SOP does not establish that they were deliberately different. Let me let me ask you, counsel, about if, in fact, your training is tied both to the manual and to the standard operating procedures and you fail to provide the officer the standard operating procedures, how is that not a combination of a failure to train and a failure to supervise? Your Honor, I think if you would look at the case, the Emerson case, that's 562, they talk about the same similar allegations that the that the city failed to give out the standard operation procedures, no policy and so forth. And in that particular case, the Sixth Circuit rejected that argument because they said it wasn't enough to show deliberate indifference. That's what the case stands for, to show that the city had acknowledged a reoccurring violation of the same similar conduct by defendant Mosley in this particular case. And although and it just was not strong enough to establish it wasn't sufficient enough to do so. And that it's not just mostly is it doesn't a custom or practice claim include other individuals allowed to engage in the same practice? Yes, Your Honor, but in this case, there was no evidence that and we keep looking at the complaint complete what the basis of the plaintiff's claim against Mosley is, is that he failed to he falsified a search warrant in this in this particular case. And so in our position is, there was the that the city through the the chief of police did take action. Once it learned in 219, and that's one of 219, after all this occurred, it, it had Operation Clean Sweep. And in fact, in clearly in Operation Clean Sweep, in the second page, it noted that we were notified of these this conduct like in April of 219. And once we learned of these, these egregious acts, they began to take action, they undertook the investigation. And that's how they and then that time they had, they began to do their own. They did the took note of this. And that's how, combined with the FBI, that Mosley's conduct in another situation that occurred like in 2019 about and it involved bribery. But in this particular case, there is you have to have a clear pattern and there's no clear pattern of evidence of persistent pattern of failure to falsify documents in this particular case. And there's no constructive notice. Now, plaintiffs may come back and say constructive, not against Mosley in this particular case. Now, someone down the line to bring a case claim against the city with some facts like this, they got a clear record here. But at this time, the city has, there's no evidence they had that they were deliberately different because they had notice of reoccurring patterns of incidents involving falsifying search warrants. Number two, or even conduct by Mosley, no report that he was reported for doing anything wrong and the city failed to discipline or to monitor him. No evidence in here about that. So what you're doing is doing emphasis by emphasis of others. And you can't do that in a Monell claim. And it's like it's not strong enough. And there's no and there's no deliberate indifference that is established as a clear pattern of law in this particular case. Well, we thank you for your arguments. Rebuttal. Thank you, Your Honor. Yes, one of the things that I'm interested in dealing with this failure to train and failure to supervise allegation is that as Ms. Fegan said, Mosley was trained when he first entered this unit about search warrants. So I'm just curious, what what is in this SOP that you have mentioned several times that Mosley would have known about had he had even provided that and been required to read it that he didn't already know? Well, so first it's going to say don't lie, right? Right. It is. So I already knew that. So so what else what else was in there that you point to that has some sort of causal connection here? Yeah. First point, Your Honor, I think that what the brief says and what the record supports is that Mosley says he wasn't trained when he entered the narcotics unit or when he went into major violators unit. He says he was trained as a part of undercover training, which was a unit that he was in separate from narcotics and preceding narcotics. So I don't think there's any evidence that he was trained in narcotics in any way. Judge Gibbons, I'm sorry, had a follow up. Well, your opposing counsel said that he's indicated that he knew not to lie on a search warrant application. Is that is she right about that? Yeah, she's yeah, she's right that I'm sure all officers are generally. What's the specific evidence in the record that pertains to this officer? So I think one important thing and this goes completely against what counsel just said in her argument when she says there's no evidence that there was a failure to supervise Mosley, specifically if we want to look at the narrow issue specifically as it relates to falsification of warrants. And that's not true. What Mosley testified is that Meadows was my supervisor. And because of the amount of time and experience I had had in this unit that was already known to be corrupt and established to be corrupt. Meadows didn't look at anything that I did and he'd rubber stamp my requests. Is your opposing counsel incorrect when she said I understood her to say that there was evidence in the record that he knew it was wrong to lie in a search warrant application? Yes, I mean, I. Yes, that's in the record. Yes, that's correct. I mean, I can't argue that any officer, including all the officers who Detroit has watched engage in unlawful conduct, they all know that they're not supposed to do that. But they also know and that's why there's a failure to supervise claim here that's essential to this. They also know nobody's watching. Nobody's watching. The FBI is watching us more closely than our own supervisors are. And we can routinely get away with this. If he had been more closely supervised, what do you and I'm just asking you to speculate. I know the record. But what would closer supervision by his supervising officer have discovered? If this guy decides I'm going to lie in the affidavits so that I can gain bogus probable cause to get in, plant drugs and then try to bribe somebody for me not to prosecute him. What exactly is the supervisor going to catch there? I'm curious. Well, I mean, you know, it's one of those frustrating things where you don't know because it hasn't happened. But I'd imagine. What would you speculate? I mean, I'd imagine that closely supervising them is going to involve putting individuals who can actually be trusted from that unit on these raid teams. This raid team, in contrast, had six different individuals who all ended up being the subject of Operation Clean Sweep. So failure to supervise as you're articulating it would be using different people? Well, potentially, but also making sure that those people know that supervisors are going to be verifying the evidence that they're using in order to get into a home. Verifying that. That's what I'm trying to figure out. How would a supervisor verify that? If an officer comes to the supervisor in an affidavit and says, I've got a C.I., the C.I. says, I saw drugs in the house. I saw hand-to-hand delivery. And so that's my probable cause. What do you envision the supervisor's role is it to verify or refute that? So I have a very clear picture of what that is, Judge McKeegan. And I hate to say this because it just wasn't the subject of the briefing here. But it is the subject of the briefing. In other cases against the city of Detroit, you brought up the C.I. process. What has come out, and again, it's not part of this record because it wasn't the focus of this case. What has come out is that the city of Detroit had a pattern and a formal policy where you as an officer, and this is something addressed in Operation Clean Sweep, so I think it actually is part of the record. You as an officer could go to a prosecutor and just say exactly that. I have a C.I. who told me X. Not, here's a C.I. that I've worked with 10 other times before here, the cases that have led to other convictions where they've proven to be reliable, none of that. Simply, I have a C.I. who told me X. And then I, by myself, because I don't have to have a partner with me when I surveil homes, I by myself watched this home and saw hand-to-hand drug transactions. That's my probable cause for getting into this home. And then you have an individual like Meadows who's simply going to rubber stamp it and say, okay. Practically, it's a process. There should have been a different process. At a minimum, there should have been a different process. Do we have any cases that would help us out one way or the other in determining whether this lack of process that you're describing falls within failure to supervise? I don't know if there's one that's completely on point to this particular process. Give me one that's close. F3rd 265, and that's a 2020 case. And one of the things that I think is interesting about this case is it was an excessive force case. That's the underlying constitutional violation that we're talking about. On Monell, they proceeded on a failure to supervise claim. The failure to supervise isn't my supervising officers not in the field watching the force that I'm using. The failure to supervise is that there was a lack of annual reviews happening and periodic reviews happening with supervisors where they're actually interacting with their officers to find out what they're doing when they're out in the streets. I'd say that if that applies in something— Okay, we'll look at it. Okay, thank you, Your Honor. I appreciate your time today. We thank you both for your briefing and your argument, and the opinion will be taken under advisement and issued in due course.